J-A18002-25

2025 PA Super 205

| | | |
|---|---|---|
| RONALD BORDONE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VIRGINIA BORDONE | : | No. 3155 EDA 2024 |

Appeal from the Order Entered October 28, 2024
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2021-60355

BEFORE:  OLSON, J., DUBOW, J., and BECK, J.

CONCURRING OPINION BY BECK, J.:       **FILED SEPTEMBER 16, 2025**

I join the decision of the learned Majority in full.  I write separately to address Husband's claim that, pursuant to Pennsylvania law, "the law of the state in which the marriage is celebrated[] governs the validity of the marriage in regard to the capacity of the parties to enter into the contract of marriage." Husband's Brief at 10 (citing ***Commonwealth v. Custer***, 21 A.2d 524 (Pa. Super. 1941) (en banc)).  Although Husband is correct that the ***Custer*** Court espoused "[t]he general rule … that a marriage valid where contracted is valid everywhere," the Court also recognized that this rule is not without exceptions.  ***See Custer***, 21 A.2d at 526.  One such exception noted in ***Custer*** is "marriages repugnant to the public policy of the domicile of the parties,"

including "polygamy."[1]  *Id.*  The Court continued, observing that "[s]ince the recognition of foreign marriages rests on comity only, the surrounding circumstances may and should be freely inquired into in deciding whether to accord validity to them."  *Id.* (citation omitted).

Another en banc panel of this Court subsequently applied Pennsylvania law to hold a marriage valid that would have otherwise been nullified under the laws of the state where the marriage occurred.  *See Commonwealth ex. rel. Wenz v. Wenz*, 171 A.2d 529 (Pa. Super. 1961) (en banc).  In *Wenz*, this Court considered the validity of a divorce decree entered in the State of Ohio, following which the appellant entered into a second marriage in the State of Maryland and resided with his second spouse in Pennsylvania.  *Id.* at 530.  Of particular relevance to the present matter, the *Wenz* Court recognized, that an invalidation of the Ohio divorce decree would be an "impediment" to the marriage under Maryland law.  *Id.* at 532.  Though it agreed with the conclusion of the trial court that there was insufficient credible evidence presented to find the Ohio divorce decree was invalid, it further held that even if it was invalid, the marriage should be sustained under

---

[1]  Bigamy is one form of polygamy.  *See* Black's Law Dictionary (12th ed. 2024) (defining "polygamy" as "[t]he fact, condition, or practice of having more than one spouse simultaneously"); *see also* Majority Op. at 7 n.4 (defining "bigamy" as, inter alia, "[t]he act of marrying one person while legally married to another").

Pennsylvania law, applying the very provision that the Majority applies in the case at bar. *Id.*; *see also* Majority Op. at 11 (citing 23 Pa.C.S.§ 1702(a)).

Husband's contention that Connecticut law should apply because the marriage occurred there is meritless. Examining the "surrounding circumstances" of the parties' marriage, *Custer*, 21 A.2d at 526, there is no question that Pennsylvania has a far greater interest than Connecticut in determining the validity of the marriage between Husband and Wife. As the Majority recognizes, the parties were in Connecticut solely to exchange their marriage vows; they spent the next twenty years residing and living their lives elsewhere—most recently, and for the past several years, in Pennsylvania. As such, I fully agree with the Majority that section 1702(a) of the Pennsylvania Divorce Code applies to validate their marriage and, on that basis, the marriage was not subject to annulment.